UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARENCE WATSON HERNDON,

           Plaintiff,

Case No. 1:15-cv-1183

Hon. Gordon J. Quist

v.

DANIEL HEYNS and
WILLIE O. SMITH,

           Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner in the custody of the

Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983.  This matter is now

before the Court on a motion for summary judgment filed by defendants Heyns and Smith (docket

no. 8) and plaintiff's motion for leave to amend the complaint (docket no. 24).[1]

    **I.**     **Background**

Plaintiff's complaint involves incidents that occurred at the Ionia Correctional Facility

(ICF) commencing in 2013.  By way of background, on October 9, 1998, while in custody at the

MDOC's Huron Valley Men's Facility, plaintiff was convicted of first-degree murder of an MDOC

employee.  Compl. at PageID.3.  Then, on March 29, 1999, plaintiff "was classified to serve his

criminal conviction exclusively in administrative segregation without realistic possibility of parole."

---

[1] Plaintiff entitled his response to defendants' motion for summary judgment as "Plaintiff's Response in opposition to defendants [sic] motion for summary judgment and cross-motion for summary judgment" (docket no. 23).  The Court does not recognize a motion imbedded in a response brief.  Plaintiff must file a separate motion and supporting brief.  *See* Fed. R. Civ. P. 7(b)(1)("[a] request for a court order must be made by motion"); W.D. Mich. LCivR 7.1 ("Motions in General") and 7.2 ("Dispositive Motions").

*Id.*  In 2013, the MDOC implemented the Interim Care Program (ICP) "for inmates diagnosed with a mental illness serving long-term segregation."  *Id.* at PageID.3-4.  Plaintiff has a diagnosis of manic major depression and rheumatoid arthritis. *Id.* at PageID.4.  On September 6, 2013, he was classified to ICP "to continue indefinite solitary segregation perpetuity" [sic].  *Id.*  Since that date, plaintiff alleged that he has been housed in an administrative segregation unit under administrative segregation standards, confined to his cell for 23-hours a day, secured in handcuff restraints for all out-of-cell movement, denied access to recreational activities, denied religious services, denied visits with family and friends, and secured in belly chain restraints.  *Id.*

On June 6, 2014, plaintiff filed a grievance against defendant Warden Willie Smith for release to the general population "alleging indefinite solitary confinement is detrimental to his health and well-being as it exacerbates his disabilities."  *Id.*  The grievance was denied.  *Id.*  Plaintiff alleged that "as a result of indefinite solitary confinement, [his] mental health is debilitating to the extent that he has difficulty sleeping, inability to focus and concentrate for long periods of time, feelings of abject hopelessness and detachment from reality, extreme agitation and apathy, suicide ideations, emotional distress and mental anguish, despite an assortment of medications."  *Id.*

Based on these allegations, plaintiff claims that defendants MDOC Director Heyns and Warden Smith violated his Eighth Amendment rights.  Director Heyns is liable "because he failed to develop and implement policies to provide meaningful periodic review for the release of ICP inmates serving permanent or indefinite solitary confinement."  *Id.*  Similarly, Warden Smith is liable "because he failed to implement meaningful periodic review for the release of ICP inmates serving permanent or indefinite solitary confinement."  *Id.*  Plaintiff also alleged that defendants "purposely created and/or [unintelligible] the ICP stratum to maintain his indefinite solitary

2

confinement at great risk to his health" and that their intent to maintain his indefinite solitary confinement "is predicated solely to avenge the death of an MDOC employee." *Id.* at PageID.4-5. Finally, plaintiff alleged that defendants acted with deliberate indifference because they knew or should have known: that he is diagnosed with manic major depression and rheumatoid arthritis; and, that permanent or indefinite solitary confinement can result in physical injury, suffering, psychological trauma, "induce adverse side effects to reintegrate into the general population upon release from said confinement." *Id.* at PageID.5-6.

Plaintiff seeks a declaration that permanent or indefinite solitary confinement to an inmate diagnosed with a mental illness constitutes cruel and unusual punishment in violation of the Eighth Amendment, a court order that defendants cease plaintiff's ICP housing pending outcome of this case, a permanent injunction that defendants "cease and desist prohibiting Plaintiff's release to the general population," compensatory damages and punitive damages. *Id.* at PageID.7.

## II.     Defendants' motion for summary judgment

### A.     Legal standard

Defendants have moved for summary judgment on various grounds. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.    Failure to Exhaust

### 1.    Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type

4

of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ P and R.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ BB.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ FF.

### 3.    Discussion

### a.    MDOC Director Heyns

Defendants point out that none of plaintiff's 13 grievances which he appealed to Step III while incarcerated at ICF were directed at MDOC Director Heyns.  *See* MDOC Prisoner Step III Grievance Report (docket no. 9-3, PageID.73-77).  Plaintiff provides no evidence demonstrating that he has filed any such grievances.  His response refers only to a grievance filed against Warden Smith.  *See* Plaintiff's Response (docket no. 23, PageID.303-304); Grievance ICF 14-06-1317-21a ("1317") (docket no. 23-1, PageID.326-332).  Based on this record, plaintiff has not properly exhausted any claims against Director Heyns.  *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91.  Accordingly, MDOC Director Heyns is entitled to summary judgment for lack of proper exhaustion.

### b.    Warden Smith

Defendants have identified two grievances exhausted against Warden Smith through the Step III appeal.  First, in Grievance ICF-10-07-1685-22b ("1685"), plaintiff complained that on July 1, 2010, Warden Smith declined his request for release to the general population:

> This grievance is against the MDOC and Warden Willie O. Smith for
> declining my request for release to the general population and/or SSOTP in direct

violation of the Eighth and Fourteenth Amendments to the United States Constitution.

Grievance 1685 (docket no. 9-3, PageID.137).[2]  Warden Smith  acknowledged that this grievance is properly exhausted.  Defendants' Brief (docket no. 9, PageID.54).  However, Grievance 1685 is not relevant to this lawsuit because it complained of an incident which occurred in 2010 before the creation of the ICP Unit.  As discussed, plaintiff's lawsuit involves an alleged Eighth Amendment violations that occurred after he was classified to ICP on September 6, 2013. Compl. at PageID.4.  Accordingly, Grievance 1685 is not relevant to this lawsuit.

Second, in Grievance 1317, which listed an incident date of June 6, 2014, plaintiff stated:

> This grievance is against Warden Willie O. Smith because I've been confined in solitary confinement since 2-5-96 and indefinite segregation is detrimental to my disabilities of rheumatoid arthritis and major depression as it exacerbates the deterioration of my physical and mental health.  Therefore, the grievance has merit on the ground that indefinite solitary confinement constitutes cruel and unusual punishment and disparate discrimination in violation of the Eighth and Fourteenth Amendments.  RECOMMENDED SOLUTION: Release to the general population.

Grievance 1317 (docket no. 9-3, PageID.106). The grievance was denied because plaintiff was not in solitary confinement, but in a general population program for Level 5 inmates due to an active diagnosis of a major mental disorder and risk factors, including 42 major misconducts and the murder of a female corrections officer.  *Id.* at PageID.107.  Warden Smith denied the grievance as the Step II respondent.  *Id.* at PageID.105.  The denial was upheld at Step III.  *Id.* at PageID.103.

---

[2] The Secure Status Outpatient Treatment Program (or "SS-OPT") is a different treatment program for prisoners with mental illness.  Affidavit of Gary Miniard (docket no. 9-4, PageID.154-156).  *See* discussion, *infra*.

### C.    Eighth Amendment claims against Warden Smith

### 1.    Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws.  *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff claims that defendants violated his rights under the Eighth Amendment.  "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Thus, the Eighth Amendment prohibits "'deprivations of essential food, medical care, or sanitation' or 'other conditions intolerable for prison confinement.'" *Moore v. Lowe*, No. 1:13-cv-1136, 2014 WL 905840 at *10 (W.D. Mich. March 7, 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981)).  However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).   Rather, "[t]he contemporary standards of civilized decency that currently prevail in society determine whether conditions of confinement are cruel and unusual." *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).

A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A court considering a prisoner's Eighth

Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson*, 503 U.S. at 8.

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. To establish the objective component, extreme deprivations are required and only deprivations denying "the minimal civilized measure of life's necessities" are grave enough to create a violation of the Cruel and Unusual Punishment Clause. *Hadix*, 367 F.3d at 525, citing *Hudson*, 503 U.S. at 9, and quoting *Rhodes*, 452 U.S. at 347.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### 2. Plaintiff's background and classification

In support of the motion for summary judgment, defendants presented the affidavit of ICF Resident Unit Manager (RUM) Gary Miniard. In his affidavit, RUM Miniard stated that he has direct oversight of ICF's ICP Unit and knowledge of both the nature of the unit and the record of plaintiff's classification. *See* Affidavit of Gary Miniard (docket no. 9-4). The affidavit contradicts plaintiff's allegation that he is in "indefinite solitary segregation." ICP is a general population

9

program "best described as an OPT [outpatient] level of care program for security level V inmates who have an active diagnosis of a major mental disorder and who for various reasons of safety, security and/or risk factors would be classified to segregation most likely for an extended period of time." Miniard Aff. at PageID.155.  Plaintiff's risk factors resulting in his classification to the ICP Unit include an extremely violent history, including forty-two major misconduct violations from charges including Possession of a Weapon, Possession of Dangerous Contraband and Homicide-Murder of a Corrections Officer.  *Id.*  In this regard, plaintiff was found guilty of first degree murder of Corrections Officer Tammy Sperles, had previous convictions of assault with intent to commit murder and assaulting a prison employee, as well as criminal sexual conduct charges pending in another state.  *Id.*

The ICP Unit Program Statement provides that "prisoners in this unit will have a weekly case management meeting that includes housing staff, Security Classification Committee members and Outpatient Mental Health staff  .  .  .  .   Outpatient Mental Health staff will, at a minimum, provide a weekly case management meeting with each prisoner individually along with the opportunity to participate in weekly group therapy sessions."  *Id.   See* ICP Program Statement/Description (docket no. 9-4, PageID.157-165).  In addition, substantial medical care is provided: nursing staff are required to make daily rounds and visit each prisoner in the ICP Unit; medical practitioners are required to make unit rounds at least every two weeks; and the Health Unit Manager (HUM) and a Qualified Mental Health Professional are required to make unit rounds at least weekly.  *Id.*

3.      **Discussion**

For purposes of this motion, Warden Smith assumes that plaintiff has met the objective component of his Eighth Amendment claim, i.e., that plaintiff's arthritis and mental disorder are serious medical conditions.  Defendants' Brief at PageID.58.  However, Warden Smith contests the subjective component of the Eighth Amendment claim, i.e., that he knew of and disregarded an excessive risk to plaintiff's health and that his conduct was not the result of inadvertence or error in good faith.  *See Farmer*, 511 U.S. at 837; *Whitley*, 475 U.S. at 319.

Warden Smith submits arguments in support of his motion for summary judgment.  First, the complaint "is sparse on details and fails to allege any personal involvement by Warden Smith."  Defendants' Brief at PageID.59.  A supervisor's liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act.  *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).   In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it."  *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Here, while plaintiff alleged that Warden Smith failed to implement meaningful periodic review for the release of ICP inmates, he did not grieve the issue.  Plaintiff's grievance simply stated that "the matter was "discussed with Deputy Warden Huss" that Warden Smith release him into the general population.  Grievance 1317, PageID.106.  There is no allegation of wrongdoing by Warden Smith.

Second, Warden Smith points out that the denial of an administrative grievance does not amount to active unconstitutional behavior.  A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "The mere denial of a prisoner's grievance states no claim of constitutional

dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care). Here, the only action that Warden Smith took was denial of the grievance appeal at Step II. Accordingly, Warden Smith is entitled to summary judgment.[3]

### III.     Plaintiff's motion to amend

After defendants moved for summary judgment, plaintiff moved for leave to amend the complaint to include a new count and add an additional plaintiff, Richard Goolard. In the amended complaint, plaintiffs Herndon and Goolard dropped MDOC Director Heyns as a defendant, naming only Warden Smith. *See* Proposed Amend. Compl. (docket no. 25-1, PageID.409). Goolard included similar claims as Herndon, i.e., he was classified to ICP on September 6, 2013 and filed a grievance against Warden Smith on November 27, 2014 "for release to the general population, alleging indefinite solitary confinement is detrimental to his health and well-being, as it exacerbates his mental illness." Proposed Amend. Compl. at PageID.410. The proposed amended complaint alleges two counts against Warden Smith. In Count I, plaintiffs allege that Warden Smith violated their Eighth Amendment rights by placing them in indefinite solitary confinement. In Count II, plaintiffs allege that Warden Smith violated their rights under Fourteenth Amendment's Equal Protection Clause because they are being treated "differently from other inmates similarly convicted of first-degree murder by imposing indefinite solitary confinement without a realistic possibility of release to the general population." *Id.* at PageID.414.

---

[3] Having determined that Warden Smith is entitled to summary judgment, it is unnecessary to address the warden's claim of qualified immunity.

12

Fed. R. Civ. P. 15(a) regulates amendment of pleadings providing as follows:

**(1) Amending as a Matter of Course.** A party may amend its pleading once as a matter of course within:

**(A)** 21 days after serving it, or

**(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

**(2) Other Amendments.** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).

Because defendants have not filed a responsive pleading or a motion under Fed. R. Civ. P. 12(b), (e) or (f), plaintiff may amend his complaint as a "matter of course" under Fed. R. Civ. P. 15(a)(1). However, because plaintiff seeks to amend the complaint by adding a co-plaintiff, he is not entitled to amend as a matter of course, because the complaint is also subject to Fed. R. Civ. P. 20 ("Permissive joinder of parties") which provides in pertinent part that:

**(a) Persons Who May Join or Be Joined.**

**(1) Plaintiffs.** Persons may join in one action as plaintiffs if:

**(A)** they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

**(B)** any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1).

13

"Joinder of parties is a matter highly dependent on judicial discretion." *Independent Liberty Life Insurance Co. v. Fiduciary & General Corp.*, 91 F.R.D. 535, 537 (W.D. Mich. 1981). *See Boyd v. Diebold, Inc.*, 97 F.R.D. 720, 723 (E.D. Mich. 1983) ("[p]ermissive joinder under Rule 20 rests within the sound discretion of this Court"). Courts construe the permissive joinder rule liberally "in order to promote trial convenience and to prevent multiple disputes." *Patrick Collins, Inc. v. John Does 1-21*, 286 F.R.D. 319, 321 (E.D. Mich. 2012). *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966) ("[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged").

In this instance, however, permissive joinder of a new prisoner plaintiff will not promote trial convenience. As one Court pointed out, there are a number of logistical and legal complications which arise in lawsuits filed by multiple *pro se* prisoner plaintiffs:

> Notwithstanding Fed.R.Civ.P. 20(a)(1), there are significant practical problems with allowing several prisoners to file a joint complaint. As another judge in this district has noted, there are "pervasive impracticalities associated with multiple-plaintiff prisoner litigation, which militates against permissive joinder even if it were otherwise allowed by Rule 20(a)." *Proctor v. Applegate*, 661 F.Supp.2d 743, 780 (E.D.Mich.2009) (Borman, J.) (citing *Boretsky v. Corzine*, No.2008 WL 2512916, * 5 (D.N.J. June 23, 2008)). Several of the problems that arise from multiple plaintiff prisoner litigation include the "need for each plaintiff to sign every pleading, and the consequent possibilities that documents may be changed as they are circulated, or that prisoners may seek to compel prison authorities to permit them to gather to discuss the joint litigation." *Id.* (quoting *Boretsky*, at * 5). Moreover, allowing multiple prisoner-plaintiffs to proceed in a single action "invites violations of Rule 11(a), which requires every pleading to be signed by all *pro se* plaintiffs." *Proctor*, 661 F.Supp.2d at 780 (citing *Ghashiyah v. Frank*, No.2008 WL 680203, * 1 (E.D.Wis. March 10, 2008). Multiple plaintiff prisoner cases like these can also often lead to pleadings being filed on behalf of the other plaintiffs without their consent. *Id.* An additional problem with multi-plaintiff litigation in the prisoner context is that "jail populations are notably transitory, making joint litigation difficult." *Id.* (quoting *Boretsky*, at *5); *See also White v. Tennessee Bd. of*

14

> *Probation and Paroles*, No.2007 WL 1309402 (W.D.Tenn. May 3, 2007) ("[I]t is administratively impractical to permit five inmates at three institutions to litigate their claims in a single action"). Other district courts have also pointed to the "need for resolution of individualized questions of fact and law surrounding the requirement for exhaustion of administrative remedies under 42 U.S.C. § 1997e(a)." *Proctor*, 661 F.Supp.2d at 780 (quoting *Boretsky*, at *6) (additional citations omitted). Prisoners are simply "not in the same situation as non-prisoner joint plaintiffs; prisoners' circumstances make joint litigation exceptionally difficult." *Id.* (quoting *Boretsky*, at *6).

*Spencer v. Bynum*, No. 2:13-13056, 2013 WL 4041870 at *3 (E.D. Mich. Aug. 8, 2013).

In addition, another prisoner plaintiff cannot simply join in this litigation without resolving the payment of filing fees, and, if *in forma pauperis status* is granted, screening the new plaintiff's claims under 28 U.S.C. §§ 1915(e)(2) and 1915A and 42 U.S.C. § 1997e(c). *See Talley–Bey v. Knebl*, 168 F.3d 884, 887 (6th Cir.1999) ("Because each prisoner chose to prosecute the case, we hold that each prisoner should be proportionately liable for any fees or costs that may be assessed. Thus, any fees and costs that a district court or that we may impose must be equally divided among all the participating prisoners."); *Crawford v. Prison Health Services*, No. 1:12-cv-409, 2012 WL 4740219 at *2 (W.D. Mich. Oct. 3, 2012) ("When a case is filed by more than one prisoner, the Plaintiffs share the fees and costs proportionately.").

In this regard, the Court cannot overlook a fatal flaw in plaintiff's complaint. The alleged wrongful conduct at the heart of this lawsuit is Warden Smith's refusal to release plaintiff from "indefinite solitary confinement" or administrative segregation into the general population. As discussed, the ICP program, is neither indefinite solitary confinement nor administrative segregation, but rather a general population program for security level V mentally ill prisoners with safety, security and/or risk factors, which was created *to avoid* having these prisoners spend extended periods in segregation. The ICP Unit Program Statement provides in pertinent part:

The ICP provides prisoners diagnosed with an Axis I Major Mental Disorder (MMD) with ongoing high risk profiles an opportunity to be housed in a self-contained general population unit that offers a safe, secure and less stressful environment along with most of the institutional programming and clinical services available in general population.  The prisoners in this unit will have a weekly case management meeting that includes housing unit staff, Security Classification Committee members and Outpatient Mental Health staff.  Prisoners will be maintained on routine handling which is custody rounding of no less than an hour.  Outpatient Mental Health staff will, at minimum, provide a weekly case management meeting with each prisoner individually along with the opportunity to participate in weekly group therapy sessions.

Prisoners in the ICP may participate in activities and services provided to the prisoners in the General Population setting as administratively feasible.  However, to assist in an incremental and, hopefully full transition to a General Population setting, these prisoners are not required to engage in traditional General Population group activities or be involved in any activities that require the mass movement of prisoners.  Activities that are traditionally provided to General Population prisoners in a group setting, or which require mass movement, shall instead be provided to prisoners in the housing unit, the prisoner's cell, or an alternate area of the institution.

ICP Statement/Description at PageID.158.  Because the ICP program is a general population program designed to help security level V mentally ill patients like plaintiff avoid spending extended periods of time in segregation, neither the original nor proposed amended complaint provide a basis for relief against Warden Smith for failing to release Herndon (or Goolard) into the general population.

Based on these considerations, allowing plaintiff to add a co-plaintiff and file a joint amended complaint, which contains the same basic flaw as the original complaint, will not promote trial convenience.  Rather, it will create unnecessary logistical and legal complications.  Accordingly, plaintiff's motion to amend should be denied.

16

IV.     **Recommendation**

For these reasons, I respectfully recommend that defendants' motion for summary judgment (docket no. 8) be **GRANTED**, that plaintiff's motion to amend (docket no. 24) be **DENIED**, and that this action be **TERMINATED**.


Dated:  August 22, 2016                    /s/ Ray Kent
                                           RAY KENT
                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).